IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BYRON BOYKINS (M03783), | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 23 C 2028 |
| v. | ) |
| | ) Hon. Jorge L. Alonso |
| WARDEN LARRY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Defendants Rob Jeffreys, LaToya Hughes, Dr. Catherine Larry and Ryan Woods's motion to dismiss [80] is granted. The moving defendants are dismissed from this suit. The claims against Defendants Senodenos, Butler, Crews and Adams remain. The stay of discovery [69, 84] is lifted. A status hearing is set for 8/20/25. The parties shall file a joint status report by 8/15/25.

## STATEMENT

Plaintiff, Byron Boykins, brings this civil rights action pursuant to 42 U.S.C. § 1983 in connection with certain events that occurred during his incarceration at the Joliet Treatment Center ("JTC"). Certain defendants—namely, former Illinois Department of Corrections ("IDOC") director Rob Jeffreys, IDOC Acting Director LaToya Hughes, JTC Warden Dr. Catherine Larry, and Assistant Warden Ryan Woods—move to dismiss for failure to state a claim.

### I. Background

The pertinent allegations of the operative Second Amended Complaint are as follows. Plaintiff was first transferred to the "multi-disciplinary, multiple-security facility" at the JTC in 2018. (2d Am. Compl. ¶ 20, ECF No. 78.) Beginning in 2018 or 2019, Plaintiff filed several grievances against Defendant S. Adams, a Correctional Treatment Officer ("CTO") at JTC, complaining of her misconduct and harassment of Plaintiff as well as her alleged improper relationship with another officer. In February 2022, for example, Plaintiff filed a grievance against CTO Adams to complain that she had assaulted him while he was on a phone call. In this grievance, Plaintiff asked to speak with Woods about CTO Adams's acts of assault and harassment.

Plaintiff alleges that certain inmates who received desirable job placements from CTO Adams were loyal to her and interested in keeping her in the same position and role. CTO Adams allegedly informed some of these inmates, including Markese McKinney and Zachary M. Holland, that Plaintiff had filed grievances against her. McKinney and Holland threatened to harm Plaintiff

if he did not stop filing grievances against CTO Adams. Plaintiff told several officers, including Defendant Andrew Crews, that McKinney and Holland had threatened him and he feared for his safety. He wrote in a June 22, 2022 grievance that McKinney, Holland, and other inmates had threatened to harm him due to the grievances he had filed against Adams.

On July 29, 2022, McKinney fought with another inmate, and Holland joined in. IDOC policy requires inmates involved in a fight to be placed in segregation for a period of time afterward. McKinney and the other inmate were placed in segregation following the July 29 fight—but Holland was not. The following day, Holland assaulted Plaintiff, threatening to kill him and reaching for what Plaintiff believed to be a weapon. Plaintiff was forced to defend himself, but he was written up for fighting and placed in segregation, although he was not the initial aggressor.

In 2022, sometime after this incident, Plaintiff was transferred to Dixon Correctional Center. In September 2024, he was transferred back to JTC. IDOC officers at JTC have written three false tickets against him. Plaintiff believes these phony tickets were written in retaliation for his filing grievances and otherwise complaining about the treatment he received from officers and inmates at JTC.

Plaintiff's complaint contains two counts. In Count I, he accuses Dr. Larry, Woods, Adams, and three other officers who were allegedly informed of the above-described issues of failing to protect him from the risk to his safety due to Adams, McKinney, and Holland's misconduct, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. In Count II, he asserts a claim against Dr. Larry, Woods, Hughes, and Jeffreys for causing the constitutional violations he suffered by establishing, maintaining, and/or perpetuating a policy, practice, or custom of failing to adequately discipline IDOC officers who fail to protect inmates or retaliate against them for reporting misconduct.

II.     Analysis

A motion under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To state a claim, the plaintiff must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alteration marks omitted). Under this standard, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must "construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw

reasonable inferences in plaintiff's favor." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). However, it need not "accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The Court may consider, "in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

### A. Count I: Failure-to-Protect Claim Against Dr. Larry and Woods

Defendants argue that Plaintiff does not state a claim against Dr. Larry or Woods for failing to protect him because he does not plausibly allege that they knew enough about any risk to his safety to establish their personal involvement in any constitutional violation.

Section 1983 creates a cause of action against any "person" who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution," 42 U.S.C. § 1983. The cause of action is based on personal liability and predicated on fault, so, to be held liable, an individual must have caused or participated in the constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012); *Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005); *see Brooks*, 578 F.3d at 580 (explaining that a complaint's allegations must "adequately connect specific defendants to illegal acts"). The Eighth Amendment establishes a duty to protect prisoners premised on the prohibition against cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). This duty requires prison staff "to take reasonable measures to guarantee the safety of inmates." *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020) (cleaned up). A prisoner may claim that prison staff failed to protect him from an inmate attack when the prisoner was exposed to an objectively serious harm that the prison staff had actual knowledge of. *Id.*

Plaintiff does not make allegations that might plausibly support an inference that Woods and Dr. Larry had sufficient knowledge of a risk to Plaintiff's safety to give rise to liability under § 1983. He does not allege that he told them of any threats made against him or otherwise directly communicated the risk to his safety to them. In his response brief, he relies heavily on the grievances he submitted in February and June 2022, which asked for his requests to be elevated. Even if the Court assumes that these grievances contained information sufficient to establish a specific risk of harm, which is far from clear,[1] merely alleging the submission of a grievance, by itself, does not state a failure-to-protect claim against an upper-level administrator such as a warden, who "cannot be assumed to be directly involved in the prison's day-to-day operations." *Steidl v. Gramley*, 151 F.3d 739, 741 (7th Cir. 1998)); *see Robinson v. Pfister*, No. 17 CV 1051,

---

[1] *See Gevas v. McLaughlin*, 798 F.3d 475, 480-81 (7th Cir. 2015) ("Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger.")

3

2019 WL 4305527, at *6 (N.D. Ill. Sept. 11, 2019) (citing *Steidl*), *Delgado v. Ghosh*, No. 11-CV-05418, 2016 WL 316845, at *4 (N.D. Ill. Jan. 27, 2016) (same); *see also Pitts v. Willis*, No. 3:20-CV-01347-NJR, 2021 WL 5906092, at *4-5 (S.D. Ill. Dec. 14, 2021) (dismissing claim against "Grievance Office Coordinator" due to insufficient allegations of her knowledge of the risk, when the plaintiff alleged only that he submitted grievances describing the risk, without other allegations of her knowledge or that the grievance came to her attention); *Banks v. Dart*, No. 21-CV-06611, 2023 WL 6388063, at *5 (N.D. Ill. Sept. 29, 2023) (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (explaining, at summary judgment, that a plaintiff may rely on correspondence to establish a prison official's knowledge of a risk to an inmate's safety, but only if the "communication, in its content and manner of transmission, gave the prison official sufficient notice" of the risk)); *Willms v. Redgranite Corr. Inst.*, No. 22-CV-421-PP, 2023 WL 418160, at *3 (E.D. Wis. Jan. 26, 2023) (dismissing failure-to-protect claims against supervisors where plaintiff had not sufficiently alleged their personal knowledge of the risk). Plaintiff's allegations do not contain sufficient factual matter tending to establish Woods and Dr. Larry's knowledge of the risk to Plaintiff's safety to support a plausible failure-to-protect claim against them. Accordingly, the motion to dismiss is granted as to these two defendants.

### B. Count II: Policy Claim

Defendants argue that Plaintiff does not state a claim in Count II because he does not plausibly allege the existence of any policy or practice that was the moving force behind any violation of Plaintiff's constitutional rights.

The policy claim in Count II appears to be asserted against Dr. Larry, Woods, Hughes, and Jeffreys in their official capacities, although the complaint is not entirely clear on this point. Plaintiff states in the "Parties" section of the complaint that Hughes and Jeffreys are sued in their official capacities, and Woods and Dr. Larry are sued in both their individual and official capacities—but he does not say which claims are asserted against Woods and Dr. Larry in which capacities. To whatever extent, if at all, he intends to assert the policy claim in Count II against them in their individual capacities, he fails to state a claim. As the Court has explained above in connection with Count I, Plaintiff has not plausibly alleged that Woods and Dr. Larry were personally involved in any failure to protect, nor does he allege that they were aware of any policy, practice, or custom of unconstitutional treatment and turned a "'blind eye'" to it. He does not state a claim against them in their personal/individual capacities in either Count I or Count II. *See Wilms*, 2023 WL 418160, at *3 (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)); *Bernard v. Baldwin*, No. 20-CV-5368, 2022 WL 847628, at *5 (N.D. Ill. Mar. 22, 2022), *Johnson v. Neal*, No. 23-CV-610, 2024 WL 1929423, at *4 (N.D. Ind. May 1, 2024); *see also Sinn v. Lemmon*, 911 F.3d 412, 423 (7th Cir. 2018); *see generally Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (discussing official/individual capacity distinction).

Because an official-capacity claim is effectively a claim against the state itself, and states are not "persons" subject to § 1983, Plaintiff cannot bring a suit for money damages against these

4

defendants in their official capacities. *See Kyles v. Patrick*, No. 3:24-CV-03241-JEH, 2025 WL 1600928, at *2 (C.D. Ill. Feb. 3, 2025) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)); *see Serio v. Brown*, No. 23-CV-2874-DWD, 2024 WL 3552026, at *3 (S.D. Ill. July 26, 2024). He can, however, bring an official-capacity suit, under *Ex parte Young*, 209 U.S. 123, 167 (1908), for prospective injunctive relief to redress an ongoing constitutional violation against the state official who would be charged with implementing the injunctive relief, if awarded.[2] *See Bernard*, 2022 WL 847628, at *7; *see also Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (explaining that the warden of an IDOC institution is a proper defendant in a claim for injunctive relief to the extent that he "would be responsible for ensuring that any injunctive relief is carried out").

The trouble Plaintiff runs into, however, is that he does not plausibly allege the existence of any policy, custom, or widespread practice that causes an ongoing constitutional violation. To proceed on the claim he purports to assert, Plaintiff must "plead 'factual content that allows the court to draw the reasonable inference' that the defendant maintained a policy or custom that caused the alleged constitutional deprivation." *Bernard*, 2022 WL 847628, at *7 (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011)); *see Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017). That is, where, as here, he does not plead the direct involvement of policymakers or an express policy, he must plead sufficient factual matter to plausibly allege that the practice was "so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Demos v. Schneider*, No. 23 CV 741, 2023 WL 7166730, at *4 (N.D. Ill. Oct. 27, 2023) (internal quotation marks omitted); *see Phelan v. Cook Cnty.*, 463 F.3d 773, 790 (7th Cir. 2006), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). Plaintiff must "provide enough facts to create the inference that a true policy or practice is at issue, not just a random event." *Johnson v. Frain*, No. 17 C 2000, 2018 WL 2087448, at *3 (N.D. Ill. May 4, 2018) (citing *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010)); *see Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 655–56 (7th Cir. 2021).

Plaintiff has not met his pleading burden because his "assertions are unsupported by any factual allegations regarding the experience(s) of any other inmates or [other] constitutional violations." *Bernard*, 2022 WL 847628, at *8. He "offers nothing to suggest . . . the existence of the asserted polic[y] beyond [his] own experience," *id.*, which may be "isolated." *See Copeland v. Johnson*, No. 18-CV-3780, 2019 WL 4694786, at *6 (N.D. Ill. Sept. 26, 2019) (citing *Gable v. City of Chi.*, 296 F.3d 531, 538 (7th Cir. 2002) and *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993)); *see also Thomas*, 604 F.3d at 303; *cf. Bocock v. Dart*, No. 19 C 3877, 2024 WL 1350228, at *5 (N.D. Ill. Mar. 29, 2024) (reasoning that evidence of a lengthy "pattern" of incidents might suffice to demonstrate a policy, even where none involved

---

[2] Because this is the only theory potentially available to Plaintiff, his claim against Defendant Jeffreys fails for the independent reason that he is no longer the director of IDOC, and therefore is not plausibly the official charged with ensuring that any injunctive relief is carried out.

5

other inmates). What Plaintiff has pleaded does not suffice to plausibly allege the existence of a policy or widespread practice for which the state itself, as opposed to certain agents individually, might be held responsible. *Bernard*, 2022 WL 847628, at *8; *see Nash v. Radtke*, No. 20-CV-903-PP, 2020 WL 6392920, at *2 (E.D. Wis. Nov. 2, 2020), *Serio*, 2024 WL 3552026, at *3 ("[T]his appears more like a one-time issue tha[n] a deficiency caused by a standing policy or practice.").

The Court need not address Defendants' additional argument about joinder. For the foregoing reasons, Defendants' motion to dismiss is granted.

**SO ORDERED.**             **ENTERED: July 25, 2025**

**HON. JORGE ALONSO**
**United States District Judge**